The STATE of Ohio, Appellee,

v.

TRAVIS, Appellant.

[Cite as State v. Travis, 165 Ohio App.3d 626, 2006-Ohio-787.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20936.

Decided Feb. 17, 2006.

628

Robert N. Farquhar, for appellee.

Bryan K. Penick, for appellant.

FAIN, Judge.

{¶ 1} Defendant-appellant, Steven A. Travis, appeals from his conviction for domestic violence. He contends that the trial court erred by denying his Crim.R. 29 motion for acquittal. He also claims that the trial court erred by admitting evidence regarding a pretrial statement made by his wife to the police and by permitting a police officer to comment on the veracity of that statement. Finally, Travis contends that the evidence does not support his conviction.

{¶ 2} We conclude that there is evidence sufficient to support the trial court's decision to overrule the Crim.R. 29 motion for acquittal and that there is evidence in the record upon which a reasonable juror could find Travis guilty of the offense of domestic violence. We further find no prejudicial error in the trial court's decision to permit the admission of evidence regarding the pretrial statement. However, we agree with Travis that the trial court erred when it permitted a police officer to comment on the credibility of Travis's wife and that this error was prejudicial.

{¶ 3} Accordingly, the judgment of the trial court is reversed, and this cause is remanded for a new trial.

I

{¶ 4} Steven Travis was charged with domestic violence in violation of R.C. 2919.25. He entered a plea of not guilty, and the matter proceeded to trial by jury, where the following evidence was adduced.

{¶ 5} One day in August 2004, Kettering Police Officer Bradley Michael Lambert was dispatched to the Travis home following a 911 call from a young girl who reported that her mom and stepfather were fighting. Lambert testified that upon arriving at the residence, he observed Travis staggering around the house with a bottle of beer in his hand. Lambert knocked on the front door, which was opened by Travis. According to Lambert, Travis was swaying, smelled of alcohol, and appeared "moderately to highly intoxicated." When Lambert asked Travis what was going on, Travis indicated that his wife, Belinda, had attacked him and that she had caused a biting injury to his left middle finger.

{¶ 6} Lambert then proceeded to speak with Belinda. According to Lambert, Belinda informed him that she had been home sleeping when Travis came home at 1:30 a.m. She told Lambert that Travis had come in griping about her failure to "take care of the dog," and that he began to call her a "fucking bitch" and a "fucking cunt." At some point, Travis got on top of her on the bed and straddled her. She started to scream at Travis and to try to get him off her, but he hit her in the head and then covered her mouth and nose with his hand. Lambert testified that Belinda informed him that this action caused her to panic because she was having difficulty breathing. Belinda told Lambert that she had fought her husband and had bit his hand, but he merely covered her mouth and nose again. She told Lambert that she yelled for her daughter to call the police, after which Travis released her.

{¶ 7} After talking to her, Lambert asked Belinda to prepare a written statement recording what she had told him. Belinda wrote and signed a statement at that time. Lambert then arrested Travis.

{¶ 8} The state also presented Belinda as a witness at trial. She stated that she only "vaguely" remembered the night in question, but she did acknowledge that Travis has a drinking problem and that he can become aggressive and violent when he drinks. According to her testimony, Travis came home drunk on the night in question. Belinda was irritated by the late hour and by the fact that Travis was intoxicated. According to Belinda, she and Travis began to argue. Belinda testified that Travis did call her derogatory names and was acting in a belligerent manner. She testified that Travis did put his hand on her mouth, but

that he did so because she was yelling, and he did not want her to wake the children.

{¶ 9} When questioned about the discrepancy between her testimony at trial, her written statement, and her oral statements to Lambert, Belinda testified that she thought the allegations set forth in her written statement to Lambert were exaggerated. Belinda admitted that she and Travis were trying to save their marriage and that she would "love [to have] the charges dropped." When asked whether she told her daughter to call the police, Belinda testified that she did not remember doing so, but that she did remember telling Travis that "[her daughter] has big ears as an eleven year old child does and [she] listens to a lot of different things, and [that she] did not want [her daughter] to have to call the police." At several points in her testimony, when asked about her statements to Officer Lambert, Belinda insisted that she had no reason to believe that she had lied to him and that she believed that she would tell the police the truth.

{¶ 10} We also note that there is evidence that Belinda later prepared a second written statement, dated January 11, 2005, in which she stated that she wanted "the court to know that there was no Domestic Violence committed during this incident." This statement was notarized. Belinda testified that she presented this statement to the prosecutor; however, she did not testify regarding when she presented it.

{¶ 11} Following the trial, Travis was convicted of domestic violence and was sentenced accordingly. He now appeals from his conviction and sentence.

II

{¶ 12} The first assignment of error states as follows:

{¶ 13} "The trial court erred by denying Mr. Travis's Rule 29 motions where the evidence was insufficient to support a conviction."

{¶ 14} Travis contends that the trial court should have granted his motion for acquittal. In support, he contends that the state failed to identify him at trial as the offender and that the state failed to prove the elements of domestic violence.

{¶ 15} Crim.R. 29(A) provides for a judgment of acquittal if the evidence is insufficient to sustain a conviction. "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

■ {¶ 16} We begin with the claim that there is insufficient evidence of Travis's identification as the perpetrator. Travis argues that, despite the fact that "there was testimony and discussion regarding a 'Steve', 'Steve Travis', 'Mr. Travis', 'husband' and 'step-father', none of the State's [three] witnesses identified [him] as being the person they were referring to."

{¶ 17} However, we note that the state almost immediately asked Belinda whether she was "married to the Defendant in this case sitting over there, Steve," and that Belinda answered affirmatively. Furthermore, there were frequent references to the "defendant" as being the perpetrator of the events in question. We find this argument totally lacking in merit.

■ {¶ 18} We next turn to the claim that the evidence was insufficient to support a conviction. Travis's argument centers on the fact that Belinda recanted her statement to the police and testified, instead, that Travis did not harm her. He contends that without evidence regarding Belinda's pretrial statements to the police, which he claims were improperly admitted, there is no evidence to demonstrate the elements of domestic violence.[1]

{¶ 19} The domestic-violence statute, R.C. 2919.25(A), provides that "no person shall knowingly cause or attempt to cause physical harm to a family or household member." "Furthermore, [a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B). " 'Physical harm to persons' means any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

{¶ 20} In this case, viewing the evidence in a light most favorable to the prosecution, we conclude that there is evidence, in the form of Belinda's oral statement to Officer Lambert, that Travis hit her on the head and that he repeatedly placed his hand over her nose and mouth, making it hard for her to breathe. A reasonable juror could, based upon this evidence, find that the state had established the elements of the offense of domestic violence by showing that Travis intended to cause physical harm to Belinda when he hit her and when he placed his hand over her face, preventing her from breathing. Thus, we conclude that the state did provide sufficient evidence to overcome the motion for acquittal.

{¶ 21} The first assignment of error is overruled.

## III

{¶ 22} The second assignment of error states:

---

1.  We dispose of the issues regarding the admissibility of the prior statement in Part III, below.

{¶ 23} "The trial court erred by allowing the state to present evidence which circumvented Mr. Travis's right to a fair trial."

{¶ 24} Travis claims that the trial court improperly admitted evidence regarding Belinda's initial written statement, made on August 4, 2004, and by permitting Officer Lambert to testify regarding her oral statements to him. He also contends that the trial court committed error by permitting Lambert to testify with regard to his assessment of Belinda's credibility.

{¶ 25} We begin with the claim that the trial court improperly permitted the state to refer to Belinda's prior written statement during its direct examination of her. As previously noted, the state, during its direct examination of Belinda, began to utilize her written statement, made the day of the offense, in order to expose the discrepancies between her statements to Lambert and her testimony at trial. Travis contends that this was improper.

{¶ 26} Conversely, the state argues that the use of the August 4 written statement was appropriate because, pursuant to Evid.R. 607, the prosecutor made a showing that Belinda's testimony at trial came as a surprise and caused affirmative damage to the state's case. In support, the state relies upon a portion of the prosecutor's opening statement, during which he stated as follows:

{¶ 27} "Ladies and Gentlemen, I'm going to tell you what I anticipate my evidence will show. I usually have a little more firm grasp, but my evidence has been dynamic and fluid in the last few weeks, it's changed. I don't know if it's changing today or not, but I'll tell you to the best of my ability what I anticipate my evidence will be."

{¶ 28} Evid.R. 607(A) provides:

{¶ 29} "The credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage."

{¶ 30} "For purposes of the rule, a party demonstrates 'surprise' when the witness's trial testimony is materially inconsistent with the prior statement and counsel did not have reason to believe that the witness would repudiate the prior statement." *State v. Fisher*, Cuyahoga App. No. 83098, 2004-Ohio-3123, 2004 WL 1354061, ¶ 7.

{¶ 31} From our review of the record, we find that there is no indication regarding the reason for the trial court's decision to permit the state to impeach its own witness. Furthermore, there is evidence from Belinda that she gave the prosecutor a written statement from which any reasonable person could infer that she did not intend to cooperate with the prosecution of her husband. Additional-

ly, the prosecutor expressly indicated, in his opening statement, that he was aware of the possibility that Belinda's story might have changed. Therefore, we are constrained to find that the trial court erred in permitting the state to impeach Belinda. However, the written statement was cumulative with Officer Lambert's testimony regarding Belinda's oral statements, which we find to have been admissible for the reasons hereinafter noted, so we conclude that the error in having allowed the state to impeach Belinda with her prior, written statement was harmless.

{¶ 32} We next turn to the issue of whether the trial court erred by permitting Officer Lambert to testify about the oral statements made to him by Belinda. The trial court specifically found that this evidence falls into the present-sense-impression and excited-utterance exceptions to the hearsay rule. Travis disagrees and further argues that there is no indicia of reliability to support the admission of this testimony.

{¶ 33} Evid.R. 803 states:

{¶ 34} "The following are not excluded by the hearsay rule, even though the declarant is available as a witness: (1) Present sense impression. A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter unless circumstances indicate lack of trustworthiness."

{¶ 35} "There is an assumption that statements or perceptions that describe events uttered during or within a short time from the occurrence of the event are more trustworthy than statements not uttered at or near the time of the event. Moreover, 'the key to the statement's trustworthiness is the spontaneity of the statement, either contemporaneous with the event or immediately thereafter. By making the statement at the time of the event or shortly thereafter, the minimal lapse of time between the event and statement reflects an insufficient period to reflect on the event perceived—a fact which obviously detracts from the statement's trustworthiness.'" *State v. Ellington*, Cuyahoga App. No. 84014, 2004-Ohio-5036, 2004 WL 2340287, ¶ 10.

{¶ 36} In this case, there is evidence that Travis entered the residence at 1:30 a.m. and that the altercation began shortly thereafter. Officer Lambert arrived on the scene at 1:49 a.m. and entered the residence a "few minutes" later. He then spoke briefly with Travis, after which he immediately spoke with Belinda. After recounting the events to Lambert, Belinda then began her written statement. When Belinda completed the written statement, Travis was placed under arrest. The arrest occurred at 2:30 a.m., approximately one hour after Travis arrived home. Thus, the record indicates that Belinda's oral statement was made well within the first hour of the offense.

{¶ 37} We cannot say that the trial court abused its discretion in concluding that Belinda's oral statements to Lambert constituted a present-sense-impression exception to the hearsay rule. This conclusion is further bolstered by the fact that, during her trial testimony, Belinda repeatedly stated that she would be truthful with a police officer.

{¶ 38} The state also contends that Belinda's oral statement to Lambert constituted an excited utterance. Travis disagrees.

{¶ 39} For an alleged excited utterance to be admissible, four prerequisites must be satisfied: (1) the occurrence of an event startling enough to produce a nervous excitement in the declarant; (2) a statement made while still under the stress of excitement caused by the event; (3) a statement related to the startling event; and (4) the declarant's personal observation of the startling event. *State v. Taylor* (1993), 66 Ohio St.3d 295, 300–301, 612 N.E.2d 316. "The controlling factor is whether the declaration was made under such circumstances as would reasonably show that it resulted from impulse rather than reason and reflection." *State v. Humphries* (1992), 79 Ohio App.3d 589, 598, 607 N.E.2d 921.

{¶ 40} We find this to be a close call. Lambert testified that at the point he spoke to Belinda, she was "out of breath" and appeared "a little emotional, [and] a little upset." From this testimony, it does not appear that Belinda was overly excited. However, given that she did indicate, at trial, that she was truthful with Lambert and that he testified that she was somewhat emotional and upset, we cannot find an abuse of discretion on the part of the trial court.

{¶ 41} Finally, we address the claim that Officer Lambert improperly commented upon Belinda's credibility. This argument hinges upon the following colloquy between the prosecutor and Lambert:

{¶ 42} "Q: In your training as a police officer, you were asked, you are trained to get statements from witnesses at the scene, at the scene of the, of the event aren't you. And you said yes correct?

{¶ 43} "A: Yes sir. Yes sir.

{¶ 44} "Q: As part of your training in determining whether a witness is credible or incredible have you also had training on women who are victims of domestic violence changing their stories?

{¶ 45} "A: Yes, sir it's happened quite a bit.

{¶ 46} "Q: And when you're factoring in this training [the defense] asked you about, is it common for them to kiss and make up and try to deny that the event happened down the road?

{¶ 47} "THE DEFENSE: Objection your Honor, misleading, prejudicial and irrelevant.

{¶ 48} "THE COURT: It's also you opened the door on cross examination, so I'll allow the question. You may answer if you can officer.

{¶ 49} "A: Yes sir, it's happened.

{¶ 50} "Q: Now he asked you about who you found to be credible or incredible. Based on the event that you witnessed * * * back at the Travis house back in August and balancing against that what you saw with Belinda in here today and her behavior and the way she answered some of my questions, do you think she's telling the truth then or back in August or not?

{¶ 51} "A: She's telling the truth back in August."

{¶ 52} Travis again raised an objection, which was overruled by the trial court.

{¶ 53} We conclude that this testimony constitutes a violation of the rule laid down in *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, wherein the Supreme Court of Ohio held that an expert may not comment on the credibility or veracity of a witness. This court has stated that the rule announced in *Boston* applies to police officers as well as expert witnesses because a juror is likely to perceive an officer as an expert and because the rule applies to lay persons as well as experts. *State v. Miller* (Jan. 26, 2001), Montgomery App. No. 18102, 2001 WL 62793.

{¶ 54} We find no merit in the state's claim that Travis "opened the door" to this line of questioning. Travis's attorney did ask whether Lambert, in general, based upon his experience as a police officer, would find a witness incredible if the witness provided him with two conflicting accounts of an event. This line of questioning does not infringe upon *State v. Boston*, supra, and so did not open the door to questioning by the state in violation of *State v. Boston* because it solicited the officer's opinion, based upon his experience, concerning the general subject of witnesses providing conflicting accounts. It did not solicit the officer's opinion as to whether the particular witness in this case, Belinda, should be believed—the inquiry prohibited by *State v. Boston*.

{¶ 55} The second assignment of error is sustained with regard to the state's violation of *State v. Boston*, supra, and is overruled in all other respects.

## IV

{¶ 56} Travis's third assignment of error provides:

{¶ 57} "Mr. Travis's conviction was against the manifest weight of the evidence."

{¶ 58} Travis contends that his conviction is not supported by the evidence. In support, he again argues that he was never identified as the perpetrator. He further argues that the only eyewitness, Belinda, testified that he did not try to cause her physical harm.

{¶ 59} When reviewing a judgment under a manifest-weight standard of review, an appellate court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which evidence weighs heavily against the conviction." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717.

{¶ 60} As stated in Part II, above, we conclude that Travis was appropriately identified as the perpetrator.

{¶ 61} The closer issue is whether there is evidence in the record upon which a reasonable jury could find that Travis committed the offense. We must determine this issue without considering the testimony of Officer Lambert regarding Belinda's credibility, which we hold to have been inadmissible.

{¶ 62} As previously stated, Belinda's trial testimony, at the very least, indicates that she and Travis engaged in an argument and that he covered her mouth with his hand. This testimony is corroborated by the testimony of Officer Lambert, which indicates that Travis hit Belinda with his hand and that Travis repeatedly covered her mouth and nose to the point that she felt she could not breathe. Although Belinda's trial testimony was inconsistent with her oral statement to Officer Lambert in a number of respects, she nevertheless vouched for the veracity of that statement by testifying that she would not have lied to the investigating police officer. She also did not deny having made the statement to Officer Lambert. A reasonable juror could infer that Travis was attempting to cause physical harm to Belinda by restraining her and suffocating her. A juror could also infer that, by hitting Belinda in the head, Travis did inflict minor physical harm.

{¶ 63} Thus, while this is a close call, we conclude that the jury could have relied solely on Officer Lambert's recitation of the statements made to him by Belinda and that this evidence could be the basis for a finding that Travis committed the offense of domestic violence. Accordingly, the third assignment of error is overruled.

V

{¶ 64} Travis's second assignment of error having been sustained, in part, the judgment of the trial court is reversed, and this cause is remanded for a new trial.

Judgment reversed
and cause remanded.

WOLFF and DONOVAN, JJ., concur.