[Cite as *State v. Gutierrez*, 2022-Ohio-1692.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29306 |
| | : | |
| v. | : | Trial Court Case No. CRB2100920 |
| | : | |
| SAMANTHA GUTIERREZ | : | (Criminal Appeal from |
| | : | Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 20th day of May, 2022.

. . . . . . . . . . .

MARIA L. RABOLD, Atty. Reg. No. 0089080, Assistant Prosecuting Attorney, Miamisburg Municipal Court Prosecutor's Office, 110 East Central Avenue, Miamisburg, Ohio 45342
      Attorney for Plaintiff-Appellee

CHRIS BECK, Atty. Reg. No. 0081844, 1370 North Fairfield Road, Suite C, Beavercreek, Ohio 45432
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Samantha Gutierrez appeals from her conviction for domestic violence.

I.      Facts and Course of Proceedings

{¶ 2} On August 15, 2021, M.B. called the West Carrollton Police Department and requested a welfare check on his girlfriend, Samantha Gutierrez.   October 11, 2021 Trial Transcript, p. 8-9, 17.   M.B. feared that she had ingested a number of pills.   *Id.* at 17. M.B. and Gutierrez lived together on Water Tower Lane in West Carrollton.   *Id.* at 13-14, 29.   When West Carrollton Police Officer Hogston arrived at the residence, he met M.B. outside by the front door.   *Id.* at 9-10.   Officer Hogston noticed that M.B. had dry blood on his lip and on his clothing.   *Id.*   According to Officer Hogston, M.B. explained to him that Gutierrez had tried to hit and slap M.B. and had made contact with the left side of his face, causing the injury to his lip.   *Id.* at 11, 25-26.   Ultimately, M.B. refused to press charges and would not write a statement.   *Id.* at 14.

{¶ 3} On August 16, 2021, a criminal complaint was issued against Gutierrez. She was charged with one count of domestic violence, a first-degree misdemeanor in violation of R.C. 2919.25(A).   Gutierrez pled not guilty, and a bench trial was scheduled for October 11, 2021.

{¶ 4} At the beginning of the trial, Gutierrez's counsel requested that the trial judge put on the record the plea offer from the State that Gutierrez had rejected.   Trial Transcript, p. 4-5.   The trial court first explained that Gutierrez was facing a first-degree misdemeanor charge that carried with it up to 180 days in jail and $1,000 in court costs

and that the conviction would go on her criminal record and stay there. The court then explained that the State had offered to reduce the charge to disorderly conduct, which would not carry any jail time. *Id.* at 4-6. Counsel for the State also mentioned on the record that a conviction for disorderly conduct could be expunged from Gutierrez's record. *Id.* at 7. Gutierrez decided to reject the plea offer and take her chances at trial. Gutierrez explained "But I'm not guilty. * * * [I]f I'm getting something expunged in really less than six months, why would I want something else on my record too?" *Id.* at 6-7.

{¶ 5} West Carrollton Police Officer Hogston, M.B., and Gutierrez testified at trial. At the conclusion of the trial, the court found Gutierrez guilty of domestic violence in violation of R.C. 2919.25(A). On November 3, 2021, the trial court issued a conviction entry and sentencing order memorializing Gutierrez's conviction for domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. The trial court sentenced Gutierrez to 30 days in jail, suspending 28 days of the sentence and crediting her with two days served in jail. Gutierrez was ordered to pay $365 in court costs and a fine of $150. The trial court placed Gutierrez on probation for one year. Gutierrez filed a timely notice of appeal from her conviction.

II. Gutierrez's Conviction Is Supported By Sufficient Evidence And Is Not Against The Manifest Weight of the Evidence

{¶ 6} Gutierrez's first two assignments of error state:

THE STATE PRESENTED INSUFFICIENT EVIDENCE TO PROVE EVERY ESSENTIAL ELEMENT OF DOMESTIC VIOLENCE BEYOND A

REASONABLE DOUBT.

APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶ 7}** R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). "Physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3).

**{¶ 8}** Gutierrez contends that the evidence presented at trial was insufficient to establish that she was guilty of domestic violence in violation of R.C. 2919.25(A), because M.B. testified that he did not remember if she had hit or slapped him, and Gutierrez testified that she did not hit or slap M.B. Similarly, Gutierrez argues that her conviction was against the manifest weight of the evidence, because M.B. and Gutierrez "both testified that she did not knowingly cause or attempt to cause physical harm to him during the tussle over the phone which [M.B.] initiated in trying to get his phone back." Gutierrez Appellate Brief, p. 7.

**{¶ 9}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). When reviewing whether the State has presented sufficient evidence

to support a conviction, the relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.*

{¶ 10} In contrast to the sufficiency of the evidence standard, "a weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson* at ¶ 12. When evaluating whether a conviction is contrary to the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 11} Because the trier of fact sees and hears the witnesses at trial, we must defer to the factfinder's decisions whether, and to what extent, to credit the testimony of particular witnesses. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). The fact that the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence. *Wilson* at ¶ 14. A judgment of conviction should be reversed as being against the

manifest weight of the evidence only in exceptional circumstances. *Martin* at 175.

{¶ 12} At the trial, Police Officer Hogston testified that M.B. stated on the night of the incident that Gutierrez had made contact with the left side of M.B.'s face when Gutierrez was trying to slap or hit him. Trial Transcript, p. 11, 25-26. As a result of this contact, M.B. had blood on his lip and his shirt when Officer Hogston arrived. *Id.* at 9-10, 15. Further, Gutierrez and M.B. both testified that they were living together. *Id.* at 17, 29. At trial, M.B. conceded that he told Officer Hogston on the night of the incident that he "may have been hit" by Gutierrez. *Id.* at 21. While denying that she intentionally hit M.B., Gutierrez did testify that "maybe my elbow or something may have, like, hit his lip or maybe as he was on the floor something happened." *Id.* at 30.

{¶ 13} The trial court clearly credited Officer Hogston's testimony over the testimony of Gutierrez. This testimony, along with the admissions by Gutierrez and M.B. that they lived together and had been involved in a physical altercation over whether M.B. had been cheating on Gutierrez, was sufficient to establish all of the necessary elements for a domestic violence conviction. R.C. 2919.25(A). Therefore, Gutierrez's conviction was supported by sufficient evidence. Further, we cannot find on the record before us that the trial court erred in crediting Officer Hogston's testimony over the conflicting testimony of Gutierrez. As such, Gutierrez's conviction was not against the manifest weight of the evidence.

{¶ 14} Gutierrez's first two assignments of error are overruled.

III.    Gutierrez Failed To Present Any Evidence That She Was Prejudiced By The

Court's Decision To Declare M.B. a Hostile Witness

**{¶ 15}** Gutierrez's third assignment of error states:

THE TRIAL COURT ERRED IN RULING THAT [M.B.] WAS A HOSTILE WITNESS.

**{¶ 16}** In her third assignment of error, Gutierrez contends that "the prosecution failed to establish that the testimony of [M.B.] surprised the court and in fact failed to provide any justification as to why they were requesting to treat [M.B.] as a hostile witness. The Court further failed to allow an opportunity for response from Defense counsel or to state any finding as to why the witness was being deemed hostile. The Court's decision violated Evidence Rule 607." Gutierrez Appellate Brief, p. 9.

**{¶ 17}** M.B. testified as part of the State's presentation of its case against Gutierrez. During M.B.'s testimony on direct examination, the prosecutor asked him whether he remembered telling the police officer on the night of the incident that Gutierrez had hit or slapped him, causing his lip to get cut and bleed. Trial Transcript, p. 21. M.B. stated that he did not remember telling the officers that. He then stated that "I told them that we tussled for my phone and I may have been hit." *Id.* The prosecutor asked the trial judge to determine that M.B. was a hostile witness. *Id.* at 22. The trial judge granted the State's request and found M.B. to be a hostile witness. Gutierrez's trial counsel did not object to the State's request or the trial judge's ruling on the request. *Id.*

**{¶ 18}** A "hostile witness" is one who surprises the calling party at trial by turning against that party while testifying. *State v. Darkenwald*, 8th Dist. Cuyahoga No. 83440, 2004-Ohio-2693, ¶ 15. A "hostile witness" is addressed under Evid.R. 607, which states

that the "credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage." For purposes of the rule, a party demonstrates surprise when a witness's trial testimony is "materially inconsistent" with a prior statement and counsel did not have reason to believe that the witness would repudiate the prior statement. *State v. Travis*, 165 Ohio App.3d 626, 2006-Ohio-787, 847 N.E.2d 1237 (2d Dist.); *State v. Eicholtz*, 2d Dist. Clark No. 2012-CA-7, 2013-Ohio-302, ¶ 38. " 'Affirmative damage' exists when a witness's trial testimony contradicts, denies, or harms the case of the party who called that witness; it does not exist when a witness denies knowledge or fails to remember." (Citations omitted.) *State v. Johnson*, 2015-Ohio-5491, 55 N.E.3d 648, ¶ 33 (2d Dist.).

{¶ 19} "When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions." Evid.R. 611(C). "A leading question is 'one that suggests to the witness the answer desired by the examiner.' " (Citation omitted.) *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 149. "The decision as to whether a witness is a 'hostile' witness, which includes whether the elements of surprise and affirmative damage have been established, is entrusted to the broad, sound discretion of the trial court." *Johnson* at ¶ 35, citing *State v. Diehl*, 67 Ohio St.2d 389, 391, 423 N.E.2d 1112 (1981).

{¶ 20} We need not determine whether the trial court abused its discretion when it allowed the State to treat M.B. as a hostile witness. That is because, even if we were to assume that the trial court abused its discretion, Gutierrez has not shown that she was

prejudiced as a result of the court's ruling. *State v. Spear*, 9th Dist. Summit No. 28181, 2017-Ohio-169, citing *State v. Foster*, 9th Dist. Summit No. 14277, 1990 WL 72345, *2 (May 23, 1990). Rather, the questions that were asked of M.B. after he was declared a hostile witness did not produce any evidence that was prejudicial to Gutierrez.

{¶ 21} The following is the remainder of M.B.'s testimony for the State after he was declared a hostile witness:

Q: So Samantha accused you of cheating, correct?

A: Yes.

Q: Samantha was very upset as anyone would be that you're cheating, correct?

A: Yes.

Q: And then Samantha at some point in time hit you either with your phone or her hand and that caused your lip to bleed, correct?

A: I mean, that's like a trick question.

Q: Well, it's not a trick question.

THE COURT: Sir (indiscernible), did she hit you with the phone in your lip?

A: I don't - -

THE COURT: Did she hit you with the phone on your lip - -

A: But she asked me a question I don't know because like I keep telling you, I didn't even know my lip was bleeding. He pointed it out, which one - - ever one of the officers pointed it out. I didn't even know.

Q: But you did tell the officers that she in fact hit or slapped you; those were

your words to the officers, do you remember telling them that?

A: Not entirely, no.   I told them what happened through the tussle.

Q: The tussle?

A: Yeah.   We tussled for my phone.

Q: Your Honor, I have no other questions.

Trial Transcript, p. 22-24.

{¶ 22} M.B.'s answers to the State's leading questions after the trial judge declared him to be a hostile witness did not help prove any of the necessary elements in the domestic violence charge brought against Gutierrez.   Indeed, we do not believe any material information was brought out in the few leading questions by the State. Therefore, Gutierrez has failed to prove any prejudice resulting from the trial judge's decision to declare M.B. a hostile witness.

{¶ 23} Gutierrez's third assignment of error is overruled.


IV.     Gutierrez Failed To Establish Ineffective Assistance Of Counsel

{¶ 24} Gutierrez's fourth assignment of error states:

APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL IN

VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS

TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10

OF THE OHIO CONSTITUTION.

{¶ 25} In this assignment of error, Gutierrez takes issue with her trial counsel's handling of the plea offer from the State.   According to Gutierrez, "[n]o discussion was

had that domestic violence is an enhanceable offense nor was an [sic] discussion had that the offense was not expungeable or that it carried a lifetime 2nd amendment ban." Further, Gutierrez states that "being apprised of all of the primary and secondary penalties associated with a criminal charge would allow her to make a knowing and voluntary decision as to whether or not to accept a plea in a case or to go to trial." Gutierrez Appellate Brief, p. 10-11.

{¶ 26} We review alleged instances of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). Pursuant to those cases, trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his or her errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. *Id.*

{¶ 27} At the beginning of the trial, Gutierrez's counsel asked the trial court to put on the record the plea offer that Gutierrez had decided to reject. Gutierrez's defense counsel and the trial court laid out for Gutierrez the differences in the charges and potential sentences between what she was currently charged with versus what she was being offered by the State in a plea deal. The trial judge pointed out that a domestic violence conviction would stay on her record and could result in a higher fine and jail

sentence than the reduced charge offered by the State. Gutierrez responded "But I'm not guilty." Tr. 6. The trial judge and defense counsel again tried to explain that the reduced charge carried less consequences and collateral effects than the domestic violence charge. But Gutierrez refused the plea deal and stated, "[W]hy would I want something else on my record too?" Tr. 7.

{¶ 28} The record makes clear that Gutierrez was informed of the plea offer from the State. Indeed, the trial court attempted to explain on more than one occasion the potential benefits that would arise from accepting the plea offered by the State versus being convicted of the domestic violence charge. But Gutierrez made it clear to her counsel and the trial judge that she was innocent and wanted to proceed with the trial. Further, she did not hesitate to turn down the plea offer even when it was pointed out that a conviction of domestic violence would have lasting effects on her record that a conviction for the lesser charge would not. There is no evidence in the record that Gutierrez's decision to turn down the plea offer was anything less than knowing and voluntary. Neither is there any record evidence that the conduct of Gutierrez's trial counsel fell below an objective standard of reasonableness in terms of communicating and explaining the State's plea offer to her.

{¶ 29} Gutierrez's fourth assignment of error is overruled.

V. Conclusion

{¶ 30} Having overruled all of Gutierrez's assignments of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, J. and EPLEY, J., concur.

Copies sent to:

Maria L. Rabold
Chris Beck
Robert E. Messham, Jr., Visiting Judge