[Cite as *State v. Depriest*, 2023-Ohio-3430.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

STATE OF OHIO,                          :

    Plaintiff-Appellee,              : CASE NO. 22CA15

    v.                               :

RAYMOND DEPRIEST,                       : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant.             :

_____

APPEARANCES:

Mary Adeline R. Lewis, Xenia, Ohio, for appellant[1].

Paul G. Bertram, III, City Law Director, and Amy Bean, Assistant
Law Director, City of Marietta, Marietta, Ohio, for appellee.
_____
CRIMINAL APPEAL FROM MUNICIPAL COURT
DATE JOURNALIZED:9-19-23
ABELE, J.

{¶1} This is an appeal from a Marietta Municipal Court
judgment of conviction and sentence. Raymond Depriest, defendant
below and appellant herein, assigns the following error for review:

> "THE FINDING OF GUILTY ON THE CHARGE OF DOMESTIC
> VIOLENCE WAS AGAINST THE MANIFEST WEIGHT OF THE
> EVIDENCE."

---

[1] Different counsel represented appellant during the trial
court proceedings.

{¶2} On August 23, 2021, Marietta Police Department Patrolman Justin McElroy filed a criminal complaint that charged appellant with R.C. 2919.25(A) domestic violence. The affidavit alleged that on the previous day, Jessica Strader, the victim, suffered a lacerated nose, a lacerated face, three loosened teeth and one chipped tooth. Strader stated that appellant struck her in the face with her cell phone, then head-butted her nose. On August 25, 2021, the trial court issued a temporary protection order and released appellant on a personal recognizance bond. Appellant entered a not guilty plea.

{¶3} At the jury trial, Strader testified that she lived with appellant and they "had been on and off arguing for about a week and a half." Strader returned home from her job around midnight and fell asleep downstairs on the living room couch. Strader awoke when appellant returned home around 5:00 a.m. Appellant followed Strader upstairs to the bathroom and she asked appellant if he got "what he wanted." Strader explained that she received multiple texts from co-workers and friends that evening that appellant had been "tormenting them" at the bar. Strader and appellant also exchanged texts that evening and Strader told him, "he was creating problems, harassing my co-workers, that I was going to get fired

from my job because of this.  It had already been reported to my managers."

{¶4}  Strader stated that appellant called her a cheater, and he had proof and he wanted to show her.  Strader testified she walked downstairs and sat on the couch with her phone, "and he was in front of me leaning over me, yelling at me, just look at this, just look at this, holding his phone in my face, like basically trying to get me to look at whatever evidence he had."  When Strader refused to look at appellant's phone, he "snatched my phone out of my hand, smacked me across the face with it, to where I actually had gotten a gash * * * then he instantly threw it into the dining room."

{¶5}  After she retrieved her phone, Strader returned upstairs to wash her face and take a photo "to document it."  Appellant followed her upstairs and continued to yell.  Strader then went downstairs and was:

> standing at the bottom of the stairs with my back against the front door, when he proceeded to argue, and he looked at me, and he said, I'll f**king - excuse my French - murder you.  I will murder you.  And I looked at him, and I said f**king do it then.  Just do it.  And he head butted me, straight in my nose.  He broke my nose straight across. He fractured my maxillary plate, he caused my three bottom teeth to be loose, and chipped my tooth.

Strader then called a friend to drive her to the hospital while

appellant sat on the couch. Strader added that she is 5'4", and appellant is approximately 6'4".

{¶6} At trial, the state introduced: (1) a photo of Strader's gashed temple, (2) a photo of Strader's broken nose, (3) a photo of Strader's chipped tooth, and (4) texts between appellant and Strader. Strader explained that appellant broke her nose, "completely * * * across my maxillary plate, which is your sinus plate, that is underneath the bone that sits underneath your eye was also fractured." As a result of appellant head's butt, Strader had three loose teeth, one chipped tooth, and experienced headaches and sensitive teeth. Strader said the next day, appellant texted her and said that he hoped she was ok.

{¶7} The state's exhibit with the parties' text exchange revealed that, after the incident, appellant texted to Strader:

> I had a piece of skin and blood under my nail would definitely say my nail under or in your face. * * * Just want to make sure you ok and I want to apologize for a lot but overall just hope you ok. * * * This was never how I wanted it to be. No I cannot make what happened with us go away but I can say I'm not ok with what happened and will never be proud of it. Just want you to know seeing you hurt in any way is not ok with me.

{¶8} On cross-examination, Strader acknowledged that, before appellant came home that evening, Strader's coworkers blew up her phone with messages that appellant had asked questions about

Strader cheating. "We had a very rocky relationship. We had broken up a couple of times." The couple continued to reside together, partly because they shared a lease.

{¶9} Patrolman McElroy testified that, when he arrived at the hospital, he noticed Strader's nose "appeared to be fairly swollen. The bottom half was much wider than the top half. You could see the laceration on her nose, and on the side of her face." Strader informed McElroy that she and appellant, her ex-fiancé, lived together. McElroy took photos of the injuries, took a written statement, and prepared a domestic violence warrant.

{¶10} After the state rested, the defense made a Crim.R. 29 motion for judgment of acquittal. The trial court denied the motion. At the conclusion of the trial, the jury found appellant guilty as charged. The trial court sentenced appellant to (1) serve 100 days in jail with 90 days suspended, (2) serve the ten jail days via electronically monitored house arrest, (3) pay a $200 fine and costs, (4) submit to one year of community control, and (5) have no contact with the victim for one year. This appeal followed.

{¶11} In his sole assignment of error, appellant asserts that his domestic violence conviction is against the manifest weight of the evidence. In particular, appellant contends that the state

failed to prove that he acted knowingly in the commission of the offense.

{¶12} R.C. 2919.25(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." "Physical harm to persons" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). Moreover, R.C. 2901.22 defines "knowingly" as:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

{¶13} Appellant argues that the evidence adduced at trial did not establish that he violated R.C. 2919.25(A) because the state failed to prove he acted knowingly.

{¶14} The function of an appellate court when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). The court must review

the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the court clearly lost its way and created a manifest miscarriage of justice. *Id.,* quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). If the fact finder clearly lost its way, a reviewing court must reverse the conviction and order a new trial. *Id.* We will not reverse a conviction if the state adduced substantial evidence for a reasonable tier of fact to conclude that the state established all of the essential elements of the offenses beyond a reasonable doubt. *State v. Getsy*, 84 Ohio St.3d 180, 193-194, 702 N.E.2d 866 (1998); *State v. McCutcheon*, 4th Dist. Washington No. 04CA45, 2005-Ohio-4955, ¶ 19; *State v. McNichols*, 4th Dist. Hocking No. 02CA11, 2002-Ohio-6253, ¶ 11. While a manifest weight argument permits an appellate court to weigh the evidence, a presumption exists that the jury can best judge witness credibility. *Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), *McCutcheon* at ¶ 19; *State v. De Hass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶15} In the case sub judice, appellant contends that the greater amount of credible evidence proves that the victim sustained injuries to her cheek, nose and teeth due to an

unintentional or accidental, head-butt. According to appellant, because minor inconsistencies exist in Strader's testimony, Strader's credibility is suspect.

{¶16} After our review of the evidence adduced at trial, we conclude that the jury did not lose its way and create a manifest miscarriage of justice. The fact that the evidence may be subject to different interpretations does not render a conviction against the manifest weight of the evidence. *State v. Wilson,* 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 14; *State v. Gutierrez*, 2d Dist. Montgomery No. 29306, 2022-Ohio-1692, ¶ 11. The trier of fact may choose to believe all, part of, or none of the testimony of any witness. Here, the state presented evidence, if believed, that appellant knowingly caused physical harm to Strader by striking her face and head-butting her nose and mouth. Contrary to appellant's assertions, the greater amount of credible evidence offered at trial established beyond a reasonable doubt that appellant was the aggressor in the altercation. The state presented substantial evidence to support the guilty verdict: (1) photographic evidence of the victim's injuries, (2) the victim's testimony, and (3) Patrolman McElroy's testimony.

{¶17} Also, the evidence, if believed, supports the jury's finding that appellant acted knowingly. The evidence adduced at

trial revealed that appellant took the victim's phone from her hands and struck her in the face with the phone. This fact is supported by the victim's testimony, photographic evidence, and appellant's text message that stated: "I had a piece of skin and blood under my nail would definitely say my nail under or in your face."

{¶18} Although appellant contends that the injury to the victim's nose and teeth resulted from "an unintentional mistake," and that Strader attempted to block appellant from descending the stairs and safely exiting the residence, once again we point out that the jury chose to believe the victim's testimony. "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *Wilson*, *supra,* at ¶ 12. *See also DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus (witness credibility is a question primarily for the trier of fact).

{¶19} As the trier of fact, a jury is best able to view witnesses, observe their demeanor, gestures, and voice inflections, and use those observations to assess witness credibility and the weight to be given to the evidence. *State v. Prickett,* 12th Dist. Butler No. CA2017-01-010, 2017-Ohio-8128, ¶ 21. Here, the jury

obviously found Strader's testimony credible and appellant's "accident" defense not credible. "[W]hen conflicting evidence is presented at trial, a conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony." *State v. Lunsford,* 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17; *State v. Acevedo,* 2016-Ohio-7344, 71 N.E.3d 1281, ¶ 31 (9th Dist.); *State v. Baber,* 2021-Ohio-1506, 171 N.E.3d 1257, ¶ 42 (1st Dist.). Thus, in the case sub judice, we believe that the surrounding facts and circumstances support the jury's finding that appellant acted knowingly.

**{¶20}** Consequently, because the state presented substantial evidence to support the verdict, we find that the jury did not lose its way and create a manifest miscarriage of justice. Accordingly, we overrule appellant's assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed.  Appellee shall recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Marietta Municipal Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
                                Peter B. Abele, Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.