[Cite as *State v. Heard*, 2017-Ohio-8796.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO.  CA2016-11-095 |
| | : | O P I N I O N |
| - vs - | | 12/4/2017 |
| | : | |
| ROBERT HEARD, | : | |
| Defendant-Appellant. | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT
Case No. 2016 CRB 00244

David P. Fornshell, Warren County Prosecuting Attorney, Kirsten A. Brandt, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Andrew J. Brenner, 7588 Central Parke Blvd., Suite 133, Mason, Ohio 45040, for defendant-appellant

**PIPER, J.**

{¶ 1}  Defendant-appellant, Robert Heard, appeals his conviction in the Warren County Municipal Court for domestic violence.

{¶ 2}  The Hamilton Township Police Department received a 9-1-1 call during which the caller did not speak to the dispatcher, yet the dispatcher could hear a commotion occurring in the background.  After tracking the call with a cellular phone location device, an

officer arrived at the site where the police believed the call was initiated. There, the officer was met outside by Heard and his wife, Crystal Johnson. Heard and Crystal had been waiting for police, and motioned for the officer to come over to the front porch of their home. After another officer arrived, the first officer took Crystal inside and spoke with her. Crystal appeared to have been crying, and told the officer that Heard had pinned her against the door, spit on her, slapped her, and pushed her face into a pillow on the couch.

{¶ 3} Heard was charged with domestic violence, and the matter proceeded to a trial before the county court. During its case-in-chief, the state called the officer who spoke to Crystal on the night in question. The state asked the officer to relay Crystal's statements regarding what Heard had done to her, and Heard objected. The trial court overruled the objections, and the officer was permitted to testify to Crystal's statements. Crystal was not a witness, and did not appear at the trial.

{¶ 4} The trial court found Heard guilty of domestic violence and sentenced Heard accordingly. Heard now appeals his conviction, raising the following assignments of error.

{¶ 5} Assignment of Error No. 1:

{¶ 6} THE TRIAL COURT ERRED BY ALLOWING HEARSAY TESTIMONY AND THE 9-1-1 CALL TO BE ADMITTED AS EVIDENCE IN VIOLATION OF THE CONFRONTATION CLAUSE OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶ 7} Heard argues in his first assignment of error that the trial court erred by admitting the 9-1-1 call and the officer's testimony regarding Crystal's statements.

{¶ 8} The Confrontation Clause of the Sixth Amendment to the United States Constitution preserves the right of a criminal defendant "to be confronted with the witnesses against him." Accordingly, the Confrontation Clause bars the admission of "testimonial hearsay" unless the declarant is unavailable and the accused had a prior opportunity to

- 2 -

cross-examine the declarant. *State v. Primo*, 12th Dist. Butler No. CA2004-09-237, 2005-Ohio-3903, ¶ 12, citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S.Ct. 1354 (2004).

{¶ 9} Testimonial statements exist where there is no ongoing emergency and the statements resulted from a police interrogation whose "primary purpose was to establish or prove past events potentially relevant to later criminal prosecution." *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 17. In making this "primary purpose" determination, courts must consider "all of the relevant circumstances." *Michigan v. Bryant*, 562 U.S. 344, 369, 131 S.Ct. 1143 (2011).

{¶ 10} Other factors to be considered in determining the "primary purpose" of an interrogation include the formality of the situation, the standard rules of hearsay, as well as the statements and actions of both the declarant and the officer questioning the declarant. *Id.* at 367. Thus, the question is whether, in light of all the circumstances, the primary purpose of the conversation was to create "an out-of-court substitute for trial testimony." *Id.* at 358.

{¶ 11} The record indicates that at the time the officer questioned Crystal, there was no ongoing emergency occurring. Rather, testimony at trial reveals that when the officer spoke to Crystal, the officer did not recall any physical marks on Crystal, and she was not apparently injured. The officer testified that she separated Crystal from Heard, took Crystal inside the house while Heard remained outside, and then asked Crystal to explain what had occurred that led to the 9-1-1 call. The officer then went back outside to ask Heard his recollection of events, and also took photographs of some slight disarray in the living room, as well as photographs of Crystal.

{¶ 12} On cross-examination, the officer testified that upon her arrival at the scene, she did not see anything that appeared to be an "emergency in nature," and that upon speaking with Heard, his demeanor was calm. Thus, the officer did not need to take any

action to diffuse a situation involving an upset Heard.

{¶ 13} The record establishes that the officer was not speaking to Crystal to enable the officer to meet an ongoing emergency. The officer's questioning of Crystal, how the officer dealt with Crystal, and the officer's later questioning of Heard demonstrates that the primary purpose of her questioning Crystal and Heard was to establish past events, with those events potentially relevant to a later prosecution. The officer specifically took the time to separate Crystal from Heard, then asked each party separately for their account of past events. The officer, however, did not ask Crystal what *was presently happening* as if to address an ongoing emergency situation. The officer's questioning, as well as the actions and interplay between the officer and Crystal, were meant to determine past actions regarding the prosecution of Heard, and Crystal's statements were thus testimonial in nature.

{¶ 14} As previously stated, Crystal did not appear at the trial as a witness. As such, Heard was not afforded an opportunity to confront the witness against him as offered through the officer's testimonial hearsay statements.

{¶ 15} However, we find that the 9-1-1 call was used to address an ongoing emergency, and as such, was not testimonial in nature. The call was silent in that Crystal did not speak to the 9-1-1 dispatcher, but instead, a voice could be heard in the background of the call telling someone to get away, to get off, and to leave "me" alone. The dispatcher listened with the focus of determining what was *currently* happening, and to what emergency the police needed to respond. As such, the 9-1-1 call was properly admitted.

{¶ 16} Having found that Heard's right to confront the witness was denied, we sustain his assignment of error to the extent the trial court erred in admitting the officer's testimony containing hearsay statements from Crystal. However, we overrule Heard's assignment of error in part because the trial court did not err in admitting evidence of the 9-1-1 call.

{¶ 17} We have reviewed the record to determine if the trial court's error to permit the

testimony regarding Crystal's statements was prejudicial to Heard or constituted harmless error. We find that Heard's conviction was largely supported by the inadmissible testimonial statements of Crystal so that the trial court's error in admitting such was not harmless. We therefore reverse the trial court's decision that Heard's Sixth Amendment right to confrontation was not violated, vacate Heard's conviction, and remand for further proceedings. This decision renders Heard's other assignments of error moot.[1]

{¶ 18} Judgment affirmed in part, reversed in part, and the cause is remanded for further proceedings consistent with this opinion.

HENDRICKSON, P.J., and M. POWELL, J., concur.

---

1. Heard also alleged that the trial court erred in denying his Crim.R. 29 motion and that his conviction was against the manifest weight of the evidence.