[Cite as *State v. McBeth*, 2019-Ohio-59.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

       v.

JEROME J. MCBETH,

    DEFENDANT-APPELLANT.

CASE NO. 13-18-19

O P I N I O N

---

Appeal from Seneca County Common Pleas Court
Trial Court No. 17 CR 0221

**Judgment Affirmed**

**Date of Decision: January 14, 2019**

---

APPEARANCES:

    *Sarah R. Anjum* for Appellant

    *Rebeka Beresh* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Jerome J. McBeth ("McBeth") appeals the judgment of the Seneca County Court of Common Pleas. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} On December 5, 2017, Captain Daniel Dell ("Dell") of the Fostoria Police Department received a message from dispatch. Tr. 100, 102. The dispatcher stated that someone had called 9-1-1 but that the phone was suddenly hung up. Tr. 102. Thus, the dispatcher only heard someone crying on the other end of the line during the brief call. Tr. 102. Dell went to the location where the call originated and approached the house. Tr. 103. At the front door, Dell heard a man and a woman arguing inside the house. Tr. 103. Dell later testified that he heard a female voice say, "Quit hitting me." Tr. 103. Dell then knocked on the front door and announced his presence. Tr. 103. Dell stated that a 9-1-1 call was received, that he heard an argument, and that, for these reasons, he needed the door to be opened so that he could determine the welfare of those inside the house. Tr. 103.

{¶3} Dell testified that he, at this point, heard the sound of the front door being locked. Tr. 103. In response to Dell's order to open the door, McBeth said, "No, no one's coming in this house or leaving this house." Tr. 117. No one opened the door for eight to ten minutes. Tr. 103. Once another officer arrived on the scene,

Dell proceeded to breach the door and entered the house. Tr. 103-104. Once inside, Dell testified that he saw McBeth in the living room. Tr. 104. Dell then found CE, McBeth's girlfriend, in the next room. Tr. 104. CE was under a blanket hovering over three small children. Tr. 104. Dell testified that CE had "a large welt to the left side of her forehead" that "was quite pronounced." Tr. 105. CE also had a number of scratch marks on her face and was later taken to the hospital for treatment. Tr. 105, 108. At this point, McBeth fled the premises. Tr. 105. McBeth was pursued by Sergeant Kent Reinbolt ("Reinbolt"), who arrived on the scene shortly after Dell, and was apprehended a few blocks away at his parents' house. Tr. 105.

{¶4} On December 20, 2017, McBeth was charged with one count of domestic violence in violation of R.C. 2919.25(A), (D)(4); one count of abduction in violation of R.C. 2905.02(A)(2), (C); and one count of disrupting public services in violation of R.C. 2909.04(A)(3), (C). Doc. 1. At trial, Dell, CE, Reinbolt, and McBeth testified. Tr. 100, 132, 164, 179. On April 17, 2018, the jury found McBeth guilty of one count of domestic violence and one count of disrupting public services. Doc. 43. The jury, however, found McBeth not guilty of the charge of abduction. Doc. 43.

{¶5} Appellant filed his notice of appeal on June 13, 2018. Doc. 54. On appeal, McBeth raises the following assignments of error:

**First Assignment of Error**

**The trial court erred in permitting excessively leading questions
in direct examination of the alleged victim.**

**Second Assignment of Error**

**The conviction was against the manifest weight of the evidence.**

For the sake of analytical clarity, we will address the second assignment of error prior to addressing the first assignment of error.

*Second Assignment of Error*

{¶6} McBeth argues that his conviction was against the manifest weight of the evidence because CE could not recall the events of December 5, 2017.

Legal Standard

{¶7} "When 'deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion.'" *State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 8, quoting *State v. Blanton*, 121 Ohio App.3d 162, 169, 699 N.E.2d 136 (3d Dist. 1997). "In a manifest weight analysis, 'the appellate court sits as a "thirteenth juror" * * *.'" *State v. Davis*, 3d Dist. Seneca No. 13-16-30, 2017-Ohio-2916, ¶ 17, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Appellate courts "must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder 'clearly lost

its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Brentlinger*, 2017-Ohio-2588, 90 N.E.3d 200, ¶ 36 (3d Dist.), quoting *Thompkins* at 387.

**{¶8}** "A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses." *State v. Sullivan*, 2017-Ohio-8937, 102 N.E.3d 86, ¶ 38 (3d Dist.), quoting *State v. Coleman*, 3d Dist. Allen No. 1-13-53, 2014-Ohio-5320, ¶ 7. "[I]t is well established that the * * * credibility of the witnesses [is] primarily a matter for the trier of fact." *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 142 (3d Dist.), quoting *State v. Clark*, 101 Ohio App.3d 389, 409, 655 N.E.2d 795 (8th Dist.1995). "Only in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Little*, 2016-Ohio-8398, 78 N.E.3d 323, ¶ 27 (3d Dist.), quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 119.

**{¶9}** To prove the crime of domestic violence, the State must establish that the defendant "[1] knowingly [2] cause[d] or attempt[ed] to cause [3] physical harm [4] to a family or household member." R.C. 2919.25(A). To prove the crime of disrupting public services, the State must establish that the defendant "[1] purposely by any means or knowingly by damaging or tampering with any property * * * [2] [s]ubstantially impair[ed] the ability of law enforcement officers * * * to respond to

an emergency or to protect and preserve any person or property from serious physical harm." R.C. 2909.04(A)(3).

Legal Analysis

**{¶10}** At trial, the State called CE, Dell, and Reinbolt as witnesses. CE testified that McBeth lived with her and that he was the father of more than one of her children. Tr. 132. She stated that, on December 5, 2017, she came home from work at around 7:30 A.M.. Tr. 134. She said that the kids were not awake or ready for school. Tr. 135. CE, however, claimed at trial that she could not remember whether she and McBeth subsequently had an argument that morning, saying,

> **I really don't remember. Like, we argue, but I remember I
> pushed him, but I really don't remember what happened after
> that. With fibromyalgia my short-term memory is not very well,
> so I don't remember a lot of things a lot of times * * *.**

Tr. 136. When asked how she received the injuries in the photographs presented to the jury, CE stated "I don't know. I don't know what happened." Tr. 142. CE further stated that she did not remember McBeth hitting her; did not know who called 9-1-1; and did not remember going to the hospital on December 5, 2017. Tr. 139, 141. She also testified that she could have gotten away from the McBeth if she had wanted to leave the house. Tr. 141.

**{¶11}** Dell, on the other hand, testified that he heard an argument inside CE's house while he was standing outside the front door. Tr. 103. He also testified that he heard a female voice yell, "Quit hitting me." Tr. 103. He stated that McBeth

refused to let him inside the house after he ordered the door to be opened to further the process of performing a welfare check on the people inside. Tr. 103. Dell stated that he remained outside for eight to ten minutes before he breached the door. Tr. 103. Dell also authenticated several photographs of CE's facial injuries that were admitted into evidence as exhibits. Tr. 108. Ex. 4-10. During Dell's testimony, the State also introduced a copy of McBeth's prior conviction for domestic violence.

{¶12} Reinbolt testified that he arrived at the house at roughly the same time as Dell but went to the side of the house while Dell was at the front door. Tr. 167. He stated that he heard an argument occurring inside the house and that he could hear Dell announce his presence at the front door. After Dell breached the door, Reinbolt entered the house where he saw that CE was "very upset, crying, flustered." Tr. 167. Reinbolt then stated that McBeth fled the scene and that he pursued McBeth for several blocks before apprehending him. Tr. 169-170. At the time of his apprehension, McBeth did not, according to Reinbolt, have any injuries and did not subsequently get any medical treatment. Tr. 169.

{¶13} After the State's case, McBeth chose to testify in his own defense. Tr. 180. He stated that CE came home on the morning of December 5, 2017, and was upset that their children were not awake and ready for school. Tr. 181. He then testified that he spanked his children for not getting out of bed on time and characterized his parenting style as "aggressive." Tr. 181-182. He said that CE was

mad at him for spanking their children; that they began arguing; and that she "came

at [him]." Tr. 181, 183. He then said,

> **I was sort of like mostly just in shock, like—like, chill out, you know what I mean. I just grabbed her wrist and * * * she was coming at me * * *. I didn't hit her. I was just like * * * pushing her back kind of * * *. She was spazzing out I guess is what you want to call it.**
>
> **\* \* \***
>
> **Like all those marks on her face it was just all through the—the scuffling when she came at me basically, you know what I mean. Like—like I care about [CE] so it's not like I was in there beating her up or nothing, you know. And she was mad, rightfully so. She was—I don't know if it was right or wrong, but she was * * * coming at me and * * * I was just doing what I could to stop her. I was like, what is wrong, like. I couldn't understand why she was coming at me. She can't hurt me * * *.**

Tr. 183-184.

{¶14} On cross-examination, McBeth admitted to yelling at CE; being mad

at her; attempting to restrain her physically; and causing the scratches on her face.

Tr. 189, 191, 185, 193. McBeth describes the altercation in the following exchange:

> **[Prosecutor]: And at any time when you were arguing with [CE] you didn't—didn't you—so you said you pushed her back, correct, and you scratched her?**
>
> **[McBeth]: Yeah, yeah, I pushed her back like this (indicating), had her—you know, she was coming at me and I'm, like, going back, and I just put my hands out right there (indicating) and they were on her face (indicating).**

Tr. 203. When asked how CE got a welt on her forehead, McBeth said:

**She fell and hit the hardwood floor when she was trying to swing at me \* \* \* I put my hands up (indicating), you know. She—then sort of like bit my finger and then I \* \* \* like sort of, like, pushing her back \* \* \* so she keeps coming at me and she just falls down. She falls down, hits her head on the floor.**

Tr. 205. He then claimed that CE fell because she "just lost her footing." Tr. 205.

{¶15} McBeth then admitted that he refused to let the police officers into his house, saying, "I said, no, I'm not letting you guys in. And they said, Well, we have to come in." Tr. 206. He then admitted that he fled from the police after they breached the front door even though he said that the police did not behave in an aggressive manner towards him. Tr. 207, 214. McBeth said, "I'm gonna run every time." Tr. 207. On redirect examination, McBeth stated that he intended only to "protect" himself and denied hitting her. Tr. 215.

{¶16} As we review the record, we note that a conviction is not against the manifest weight of the evidence merely because the evidence supporting it is circumstantial. *See State v. Fisher*, 3d Dist. Auglaize No. 2-10-09, 2010-Ohio-5192, ¶ 28. Further, a victim need not even testify for a conviction to be supported by the manifest weight of the evidence. *See Little, supra*, at ¶ 4. At trial, CE stated that she did not remember the events of December 5, 2017. Tr. 136. However, the State presented other circumstantial evidence, including photographs of CE's injuries and the testimonies of Dell and Reinbolt. Ex. 4-10.

{¶17} Further, McBeth's subsequent testimony lent additional weight to the State's case and confirmed a number of the elements that the State had proven. Based on the evidence presented at trial, we find that the jury could have reasonably concluded that McBeth was guilty of the charges for which he was convicted. Further, we do not see any indication in the record that the jury lost its way and returned a verdict against the manifest weight of the evidence. For these reasons, McBeth's second assignment of error is overruled.

*First Assignment of Error*

{¶18} McBeth argues that the trial court erred by allowing the State to ask an excessive number of leading questions to CE at trial.

Legal Standard

{¶19} The Ohio Rules of Evidence grant trial courts broad discretion to "exercise reasonable control over the mode and order of interrogating witnesses so as to * * * make the interrogation and presentation effective for the ascertainment of the truth * * *." Evid.R. 611(A). Under Evid.R. 611(C),

> **Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.**

Evid.R. 611(C). The Rules of Evidence broadened the acceptable usage of leading questions on direct examination by allowing such interrogation while a "witness

identified with an adverse party" is testifying. *State v. Stearns*, 8th Dist. Cuyahoga No. 43675, 1982 WL 2320 (Jan. 28, 1982).

{¶20} A witness identified with an adverse party is "a witness aligned with an opposing party because of a relationship or common interest in the litigation."[1] *State v. Fields*, 8th Dist. Cuyahoga No. 88916, 2007-Ohio-5060, ¶ 14. "[E]vasiveness is not a prerequisite to finding adversity" in determining whether a witness is identified with an adverse party under Evid.R. 611(C). *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 150. The trial court need not expressly find that a witness is identified with an adverse party in order for the decision to allow leading questions to be affirmed on appeal. *State v. Benson*, 11th Dist. Portage No. 2001-P-0086, 2002-Ohio-6942, ¶ 25, citing *State v. Snyder*, 12th Dist. Butler No. 88-04-054, 1989 WL 943, *6 (Jan. 9, 1989).

{¶21} "A witness that identifies himself with an opposing party by prior acts or expressed intentions may be questioned as if on cross-examination by the party calling the witness." *State v. Shepherd*, 10th Dist. Franklin No. , 2000 WL 192360, *8 (Sept. 28, 1999), quoting *State v. Matthews*, 5th Dist. Clark App. No. 96-CA-0011, 1997 WL 593821, *10 (Sept. 26, 1997). "Ordinarily, a trial judge is in a better

---

[1] In this case, the Eighth District refers to a "witness identified with an adverse party" simply as an "adverse witness." *Fields, supra*, at ¶ 14. In this opinion, we have opted for the language in the rule.

position to evaluate the attitudes displayed by witnesses." *State v. Stearns*, 7 Ohio App.3d 11, 14, 454 N.E.2d 139 (8th Dist.).

**{¶22}** We review a trial court's application of Evid.R. 611(C) for an abuse of discretion. *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, ¶ 150. "An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *State v. Thompson*, 85 N.E.3d 1108, 2017-Ohio-792, ¶ 11 (3d Dist.), quoting *Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 14. "When the abuse of discretion standard applies, an appellate court is not to substitute its judgment for that of the trial court." *State v. Kimpel*, 2018-Ohio-2246, --- N.E.3d ---, ¶ 17 (3d Dist.).

Legal Analysis

**{¶23}** In this assignment of error, McBeth essentially advances two arguments: (1) that the leading questions asked to CE during direct examination violated his rights under the Confrontation Clause of the United States Constitution and (2) that the trial court abused its discretion in allowing these leading questions to be asked by the State. We will consider the merits of each of these arguments in turn.

**{¶24}** We initially note that McBeth has not presented any legal authority that suggests the excessive use of leading questions on direct examination may run

afoul of the Confrontation Clause.  *See State v. Banks*, 3d Dist. Seneca No. 13-12-18, 2013-Ohio-649, ¶ 34 (holding that the failure to cite legal authority violates App.R. 16(A)(7)).  Further, in his argument McBeth does not explain how the use of leading questions during direct examination violated his right of confrontation.  *See State v. Chilcutt*, 3d Dist. Crawford Nos. 3-03-16, 3-03-17, 2003-Ohio-6705, ¶ 6 (holding that "[t]he burden of affirmatively demonstrating error on appeal rests with the party asserting error.").  For these reasons, we will only briefly consider the merits of this argument under the Confrontation Clause.

**{¶25}** "The Confrontation Clause guarantees the right of defendants in criminal cases 'to be confronted with the witnesses against him [or her].'"  *Little, supra*, at ¶ 17, quoting *Crawford v. Washington*, 541 U.S. 36, 38, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).  On appeal, McBeth does not allege that testimonial hearsay statements were elicited from CE or that the Defense was not given the opportunity to cross-examine CE.  *See Crawford* at ¶ 38.  Thus, we do not see how the State's use of leading questions on direct examination presents a Confrontation Clause issue.  *State v. Irwin*, 7th Dist. Mahoning No. 06 MA 20, 2007-Ohio-4996, ¶ 16.

**{¶26}** We now examine whether the trial court abused its discretion in allowing the State to use leading questions while CE was testifying.  We begin this analysis by noting that the Defense objected to the prosecution's use of leading

questions during CE's direct examination.[2]  Tr. 135.  The trial court overruled this objection without comment, and the direct examination continued.  Tr. 135.  At trial, CE testified that McBeth lived with her; that they had "been together off and on over the last 13 years"; and that McBeth was the father of two of her children.  Tr. 132.  When asked to describe her relationship with McBeth, CE stated:

> **He's a very loving father, a very loving man.  He takes care of me. I have fibromyalgia so when I'm having a flareup he takes care of me.  And he does most of the housework.  And he takes care of our children so that when I work I don't have—we don't have to have daycare, and when he does work we share in the daycare and the housework.**

Tr. 133.  During her testimony, CE subsequently claimed that, due to her fibromyalgia, she could not remember the events of December 5, 2017, or even recall how she had been injured on that date.  Tr. 136, 137, 139, 141, 142, 145, 149, 151, 152, 153, 155, 159, 160.

{¶27} From the record, it is apparent that CE had "a strong affinity to the defendant."  *State v. Stearns*, 8th Dist. Cuyahoga No. , 1982 WL 2320, (Jan. 28, 1982).  *See State v. Warren*, 67 Ohio St.3d 789, 796, 588 N.E.2d 905 (6th Dist.); *State v. Rutkowski*, 9th Dist. Lorain No. , 1995 WL 324085, *2 (May 31, 2995). Further, her testimony closely aligned with the interests of McBeth.  *See Fields,*

---

[2] The Defense made several objections during this line of questioning.  Tr. 135, 142, 145, 148, 151.  However, the Defense expressly objected to the use of leading questions on direct examination on only one occasion. Tr. 135.  The grounds for the other objections, however, were not stated, and these subsequent objections were overruled by the trial court without comment.

*supra*, at ¶ 14. For these reasons, we find that CE was a "witness identified with an adverse party" under Evid.R. 611(C). Thus, under these circumstances, the trial court did not abuse its discretion in allowing the State to use leading question during CE's direct examination. McBeth's first assignment of error is overruled.

*Conclusion*

**{¶28}** Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Seneca County Court of Common Pleas is affirmed.

***Judgment Affirmed***

**ZIMMERMAN, P.J. and SHAW, J., concur.**

**/hls**