**[Cite as *State v. Shaw*, 2024-Ohio-5637.]**

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

**CASE NO. 1-23-54**

v.

REBEKAH A. SHAW,

**O P I N I O N**

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR2022 0110

**Judgment Affirmed**

**Date of Decision:  December 2, 2024**

**APPEARANCES:**

    *Brian A. Smith* **for Appellant**

    *John R. Willamowski, Jr.* **for Appellee**

**ZIMMERMAN, J.**

{**¶1**} Defendant-appellant, Rebekah A. Shaw ("Shaw"), appeals the August 3, 2023 judgment entry of sentence of the Allen County Court of Common Pleas. For the reasons that follow, we affirm.

{**¶2**} This case stems from an August 28, 2021 incident during which law enforcement recovered 24 grams of methamphetamine following the arrest of Timothy Perkins ("Perkins")—a homeless man who was living in Shaw's detached garage. Perkins was allegedly selling methamphetamine on Shaw's behalf in exchange for drugs. Then, on August 28, 2021, Perkins stole the methamphetamine along with money and marijuana from Shaw while she was asleep.

{**¶3**} Upon discovering the missing methamphetamine, Shaw sent threatening text messages to Perkins in an attempt to retrieve the methamphetamine. Eventually, Perkins returned to Shaw's residence, where he was assaulted in the driveway for the theft. When law enforcement arrived, the altercation dispersed. However, Shaw told law enforcement that the methamphetamine was not hers and that Perkins was assaulted because he attempted to sexually abuse her ten-year-old daughter, D.R.

{**¶4**} On April 14, 2022, the Allen County Grand Jury indicted Shaw on a single count of aggravated possession of drugs in violation of R.C. 2925.11(A),

(C)(1)(c), a second-degree felony.  On February 23, 2023, Shaw filed a written plea of not guilty.

**{¶5}** On April 27, 2023, Shaw filed a motion in limine requesting that the trial court preclude "[s]tatments made by Defendant's 10 year old daughter to Ashley Maag, purported to have been overheard by Allen County Children Services case worker."  (Doc. No. 21).

**{¶6}** The case proceeded to a jury trial on June 20-22, 2023.  On June 22, 2023, the jury found Shaw guilty of the count alleged in the indictment.  On August 3, 2023, the trial court sentenced Shaw to a minimum term of four years in prison to a maximum term of six years in prison.  (Doc. No. 69).

**{¶7}** Shaw filed her notice of appeal on August 17, 2023, and raises four assignments of error for our review.  For ease of our discussion, we will begin by addressing Shaw's fourth assignment of error, followed by her second assignment of error, and then we will address her third assignment of error, followed by her first assignment of error.

**Fourth Assignment of Error**

**Because the trial court abused its discretion and acted in an arbitrary, unreasonable, and capricious manner, and Appellant was materially prejudiced as a result, the trial court abused its discretion in declaring Ashley Maag to be a hostile witness pursuant to Evid.R. 611(C).**

{¶8} In her fourth assignment of error, Shaw argues that the trial court abused its discretion by declaring a State's witness (and Shaw's sister), Ashley Maag ("Maag"), as a hostile witness under Evid.R. 611(C). Specifically, Shaw argues that Maag did not meet the criteria for a hostile witness, as she was not aligned with Shaw and did not make any contradictory statements.

*Standard of Review*

{¶9} "'The determination of whether a witness is hostile or adverse is entrusted to the sound discretion of the trial court.'" *State v. Spear*, 2017-Ohio-169, ¶ 25 (9th Dist.), quoting *State v. Rutkowski*, 1995 WL 324085, *2 (9th Dist. May 31, 1995). "Consequently, we 'review a trial court's application of [Evid.R. 611(C)] for an abuse of discretion.'" *Id.*, quoting *State v. McKelton*, 2016-Ohio-5735, ¶ 150. *Accord State v. McBeth*, 2019-Ohio-59, ¶ 22 (3d Dist.). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

*Analysis*

{¶10} "The Ohio Rules of Evidence grant trial courts broad discretion to 'exercise reasonable control over the mode and order of interrogating witnesses so as to . . . make the interrogation and presentation effective for the ascertainment of the truth . . . .'" *McBeth* at ¶ 19, quoting Evid.R. 611(A). "Evid.R. 611(C) generally prohibits the use of leading questions on direct examination." *McKelton* at ¶ 150.

"A trial court may permit the use of leading questions, however, when "a party calls a hostile witness, an adverse party, or a witness identified with an adverse party . . . ." Evid.R. 611(C). "'A leading question has been defined as a question that suggests a particular answer by the form or substance of the inquiry.'" *State v. Messenger*, 2010-Ohio-479, ¶ 54 (3d Dist.), quoting *Haley v. Mason & Dixon Lines, Inc.*, 1992 WL 205798, *5 (1st Dist. Aug. 26, 1992). The "rule gives the court discretion to allow counsel to proceed with leading questions so that, in effect, the direct examination becomes a cross-examination by leading questions." *State v. Johnson*, 2015-Ohio-5491, ¶ 34 (2d Dist.).

{¶11} "'A witness who has a strong affinity to the defendant is a witness "identified with an adverse party."'" *Spear* at ¶ 24, quoting *State v. White*, 1995 WL 338423, *4 (9th Dist. June 7, 1995). "'A hostile witness is one who is so evasive or uncooperative on examination that his testimony is impeded.'" *McKelton* at ¶ 152, quoting Weissenberger, *Ohio Evidence: 1991 Courtroom Manual* 170 (1991). *See also Johnson* at ¶ 33 ("A 'hostile witness' is one who surprises the calling party at trial by turning against that party while testifying.").

{¶12} "A 'hostile witness' is addressed under Evid.R. 607, which states that the 'credibility of a witness may be attacked by any party except that the credibility of a witness may be attacked by the party calling the witness by means of a prior inconsistent statement only upon a showing of surprise and affirmative damage.'"

*State v. Gutierrez*, 2022-Ohio-1692, ¶ 18 (2d Dist.), quoting Evid.R. 607. "For purposes of the rule, a party demonstrates surprise when a witness's trial testimony is 'materially inconsistent' with a prior statement and counsel did not have reason to believe that the witness would repudiate the prior statement." *Id.* "'"Affirmative damage" exists when a witness's trial testimony contradicts, denies, or harms the case of the party who called that witness; it does not exist when a witness denies knowledge or fails to remember.'" *Id.*, quoting *Johnson* at ¶ 33.

**{¶13}** In this case, the State requested that the trial court declare Maag to be a hostile witness as a result of its surprise at her testimony and the affirmative damage caused by her testimony to the State's trial position. Assessing whether Maag was a hostile witness, the State asserted to the trial court that Maag initially "spoke very freely" to Stacie Powell ("Powell"), a caseworker with Allen County Children Services, "about everything that she was told by" D.R. since "she didn't think her name was going to be mentioned . . . ." (June 21, 2023 Tr. at 301). The State represented that Maag then "backed off [her] initial statement" when talking with Detective Jesse Harrod ("Detective Harrod") of the Lima Police Department, who investigated the allegation that Perkins attempted to sexually assault D.R. (*Id.* at 302). Thereafter, the State met with Maag to prepare for trial and "she again went to this story that was in the initial report from [Powell] that [D.R.] said nothing had happened and that she had to go along with the story that mommy and the brothers

she said had told her or mommy would go to jail." (*Id.* at 303). Then, "Maag testified to things that are in direct contradiction to both the report of what [she] told [Powell] . . . as well as what [she] told" the State during trial preparations. (*Id.* at 298).

{¶14} Ultimately, the trial court declared Maag to be a hostile witness after finding inconsistencies between her testimony and her prior statements, which were "a surprise to the State" and "directly pertain[ed] to the damage to their case . . . ." (*Id.* at 308). Following the trial court's declaration, the State conducted its re-direct examination of Maag using leading questions and impeached her testimony through Powell's testimony with Maag's prior inconsistent statement.

{¶15} On Appeal, Shaw argues that the trial court abused its discretion by designating Maag as a hostile witness since she "did not meet the criteria for a 'hostile witness' under Evid.R. 611(C) because she was not 'aligned with an opposing party,' in this case Shaw." (Appellant's Brief at 22). Shaw's argument is misplaced. Shaw confuses the legal concept of hostile and adverse witnesses. *Compare State v. Darkenwald*, 2004-Ohio-2693, ¶ 13 (8th Dist.) with *In re K.S.*, 2012-Ohio-2388, ¶ 15-16 (8th Dist.).

{¶16} Instead, based on our review of the facts presented, we conclude that the trial court did not abuse its discretion by declaring Maag to be a hostile witness. Notwithstanding the inconsistent statements that Maag made to Powell and

Detective Harrod, Maag's statement to the State during trial preparation (a few days before trial commenced) was materially different from her trial testimony. Consequently, it is apparent to us that Maag's contradictory testimony surprised the State and hurt its case. Indeed, based on its discussion with Maag days before trial began, the State did not have reason to believe that Maag would recant when she was called to testify. *See State v. Moorer*, 2016-Ohio-7679, ¶ 16 (9th Dist.) (noting that the State was surprised by the witness's testimony after he "had reviewed that statement with the state in close proximity to trial"). Therefore, the trial court did not abuse its discretion by declaring Maag to be a hostile witness.

{¶17} Shaw's fourth assignment of error is overruled.

### Second Assignment of Error

**Because the performance of Appellant's trial counsel fell below an objective standard of reasonable representation and prejudiced Appellant, the failure of Appellant's trial counsel to renew Appellant's objection, made in Appellant's Motion in Limine, to hearsay testimony from Stacie Powell as to statements allegedly made by D.R. to Ashley Maag, constituted ineffective assistance of counsel, in violation of Appellant's right to counsel under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶18} In her second assignment of error, Shaw argues her trial counsel was ineffective for failing to object to impermissible hearsay evidence. Specifically, Shaw argues that her trial counsel should have objected to Powell's testimony that she overheard D.R. state "that she had been told to claim that Perkins had sexually

abused her, or else Shaw would be going to jail 'for drugs in the house.'" (Appellant's Brief at 12, quoting June 21, 2023 Tr. at 340).

*Standard of Review*

{¶19} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675 (1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St.3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910 (1978).

**{¶20}** "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 2014-Ohio-259, ¶ 48 (3d Dist.), quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

**{¶21}** On appeal, Shaw argues that her trial counsel was ineffective for failing to object to the admission of impermissible hearsay evidence. "The 'failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *Liles* at ¶ 49, quoting *State v. Johnson*, 2006-Ohio-6404, ¶ 139. "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994), quoting Jacobs, *Ohio Evidence*, at iii-iv (1989). "To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *State v. Holloway*, 38 Ohio St.3d 239, 244 (1988).

**{¶22}** However, based on our resolution of Shaw's fourth assignment of error, Shaw's argument that her trial counsel was ineffective for failing to object to

Powell's testimony is without merit. That is, since we determined that the trial court properly declared Maag to be a hostile witness, the State was permitted to impeach Maag's testimony under Evid.R. 607 by presenting her prior inconsistent statement. *See Moorer*, 2016-Ohio-7679, at ¶ 18 (9th Dist.) (concluding that "Evid.R. 607 permitted the State to impeach [the hostile witness's] testimony with prior inconsistent statements"). In other words, the State was permitted to introduce Powell's testimony regarding the statements that D.R. made to Maag (at a minimum) to impeach Maag's testimony. *See State v. Hare*, 2019-Ohio-3047, ¶ 24 (5th Dist.).

{¶23} Shaw's third assignment of error is overruled.

### Third Assignment of Error

**Because the trial court abused its discretion and acted in an arbitrary, unreasonable, and capricious manner, and Appellant was materially prejudiced as a result, the trial court abused its discretion in admitting testimony from Ashely Maag as to alleged hearsay statements from D.R., in violation of Appellant's right to confrontation and cross-examination of witnesses under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution.**

{¶24} In her third assignment of error, Shaw argues that the trial court erred by admitting impermissible hearsay evidence and that the admission of that hearsay evidence violated her rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Specifically, Shaw contends that the

trial court erred by "admitting Maag's testimony regarding alleged statements made by D.R. to Maag . . . ."  (Appellant's Brief at 18).

*Standard of Review*

{¶25} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 2006-Ohio-2815, ¶ 62. As we previously stated, an abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *Adams*, 62 Ohio St.2d at 157-158. "However, we review de novo evidentiary rulings that implicate the Confrontation Clause." *McKelton*, 2016-Ohio-5735, at ¶ 97. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 2013-Ohio-647, ¶ 27 (3d Dist.).

*Analysis*

{¶26} In this case, Shaw contends that the trial court improperly allowed Maag to testify to a statement made by D.R.  Specifically, Shaw disputes the trial court's admission of Maag's testimony that D.R. said she was told to lie about Perkins attempting to sexually assault her.  We will begin by addressing whether the admission of D.R.'s hearsay statement was proper under the rules of evidence. Then, we will consider whether the admission of D.R.'s out-of-court statement violated Shaw's Sixth Amendment rights.

*Hearsay*

{¶27} Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "Hearsay is inadmissible under Evid.R. 802, unless a particular statement fails to meet the two-part definition in Evid.R. 801(C), or fully satisfies the conditions for nonhearsay prior statements under Evid.R. 801(D)(1) or (2), or falls within one of recognized exceptions under Evid.R. 803 or 804." *State v. Richcreek*, 2011-Ohio-4686, ¶ 22 (6th Dist.). "[A] statement is, by definition, not hearsay when it is offered for a purpose other than to prove the truth of the matter asserted." *State v. Armour*, 2022-Ohio-2717, ¶ 38 (3d Dist.).

{¶28} "Evid.R. 803(4) provides that a hearsay statement made for purposes of medical diagnosis or treatment is not excluded by the hearsay rule, even though the declarant is available as a witness." *State v. Pate*, 2021-Ohio-1838, ¶ 63 (2d Dist.). "Specifically, the rule permits '[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.'" *Id.*, quoting Evid.R. 803(4). "'Such statements are deemed to be trustworthy and admissible because "the effectiveness of the treatment depends upon the accuracy

of information given to the physician [so] the declarant is motivated to tell the truth."'" *Id.*, quoting *State v. Hazel*, 2012-Ohio-835, ¶ 45 (2d Dist.), quoting *State v. Brewer*, 2003-Ohio-3423, ¶ 28 (6th Dist.).

{¶29} Based on our review of the record, it is evident that D.R. made the statement regarding the veracity of her allegation to Maag for purposes of medical treatment. Notably, Maag testified that, while at the hospital, she inquired about the details of the alleged sexual assault to determine the necessity of subjecting D.R. to a rape kit examination. Maag explicitly stated that she sought to avoid subjecting D.R. to unnecessary trauma. Consequently, D.R.'s statement to Maag regarding the alleged sexual assault was made for the purpose of medical treatment. *See State v. Williams*, 2017-Ohio-8898, ¶ 15 (1st Dist.). Therefore, D.R.'s out-of-court statement was properly admissible under Evid.R. 803(4). Thus, the trial court did not abuse its discretion by admitting Maag's testimony.

*Confrontation Clause*

{¶30} Having determined that Maag's testimony was not inadmissible hearsay, we will turn to Shaw's argument that D.R.'s out-of-court statement should have been excluded under the Confrontation Clause. The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him

. . . .'" *Crawford v. Washington*, 541 U.S. 36, 42 (2004), quoting the Confrontation Clause.

> The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

*State v. Maxwell*, 2014-Ohio-1019, ¶ 34.

**{¶31}** Consequently, "[o]nly testimonial hearsay implicates the Confrontation Clause." *McKelton*, 2016-Ohio-5735, at ¶ 185. "Therefore, even if a statement falls under a hearsay exception it can be excluded as testimonial because such statements violate the Confrontation Clause." *State v. Hairston*, 2016-Ohio-8495, ¶ 27 (10th Dist.). Conversely, nontestimonial statements may be admissible under a hearsay exception. *Id.* Likewise, "[t]here is also no dispute that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *State v. Ricks*, 2013-Ohio-3712, ¶ 18, quoting *Crawford* at 59, and citing *Williams v. Illinois*, 567 U.S. 50, 57-58 (2012).

**{¶32}** "The key issue is what constitutes a testimonial statement: 'It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *State v. Hood*, 2012-Ohio-6208, ¶ 33, quoting *Davis v.*

*Washington*, 547 U.S. 816, 821 (2006). Even though the United States Supreme Court "did not define the word 'testimonial,'" courts have distinguished statements made to law enforcement from statements communicated to non-law enforcement officials. *Maxwell* at ¶ 34, quoting *Crawford* at 52.

**{¶33}** "If the questioner is a law enforcement officer or an agent of law enforcement, the court applies the primary-purpose test to determine whether the statements are testimonial." *State v. Pettway*, 2009-Ohio-4544, ¶ 69 (8th Dist.). Such

> "[s]tatements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency," but that [such] statements are testimonial when the circumstances indicate that there "is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

*Hairston* at ¶ 27, quoting *Davis* at 822. "In making [the] 'primary purpose' determination, courts must consider 'all of the relevant circumstances.'" *State v. Heard*, 2017-Ohio-8796, ¶ 9 (12th Dist.), quoting *Michigan v. Bryant*, 562 U.S. 344, 369 (2011). "Other factors to be considered in determining the 'primary purpose' of an interrogation include the formality of the situation, the standard rules of hearsay, as well as the statements and actions of both the declarant and the officer questioning the declarant." *Id.* at ¶ 10, quoting *Bryant* at 367. "Thus, the question is whether, in light of all the circumstances, the primary purpose of the conversation

was to create 'an out-of-court substitute for trial testimony.'" *Id.*, quoting *Bryant* at 358.

**{¶34}** "While the primary purpose test applies to statements made to law enforcement, the Ohio Supreme Court has 'adopted the "objective-witness test" for out-of-court statements made to a person who is not law enforcement.'" *State v. Little*, 2016-Ohio-8398, ¶ 24 (3d Dist.), quoting *State v. Jones*, 2012-Ohio-5677, ¶ 161. When a statement is communicated to a non-law enforcement official, such statement is "'a testimonial statement [if it is] made "under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."'" *State v. Durdin*, 2014-Ohio-5759, ¶ 17 (10th Dist.), quoting *State v. Stahl*, 2006-Ohio-5482, paragraph one of the syllabus, quoting *Crawford*, 541 U.S. at 52. "The focus is on the expectation of the declarant at the time the statement is made, and the intent of the questioner is irrelevant unless it could affect a reasonable declarant's expectations." *State v. Menton*, 2009-Ohio-4640, ¶ 24 (7th Dist.). Significantly, "[s]tatements to persons outside of law enforcement are 'much less likely to be testimonial than statements to law enforcement officers.'" *Little* at ¶ 24, quoting *Ohio v. Clark*, 576 U.S. 237, 246 (2015).

**{¶35}** We conclude that Shaw's confrontation rights were not violated by the admission of D.R.'s out-of-court statement. Decisively, even if we assume without

deciding that D.R.'s statement was testimonial, Shaw's confrontation rights were not violated because D.R. testified at trial.

{¶36} Shaw's third assignment of error is overruled.

**First Assignment of Error**

**Because the jury lost its way and created a manifest miscarriage of justice in convicting Appellant, Appellant's conviction, in case number CR-2022-0100, was against the manifest weight of the evidence.**

{¶37} In her first assignment of error, Shaw argues that her aggravated possession of drugs conviction is against the manifest weight of the evidence. Specifically, Shaw contends that the evidence supporting that she committed aggravated possession of drugs is not credible.

*Standard of Review*

{¶38} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). A reviewing court must, however, allow the trier

of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 2012-Ohio-5233, ¶ 9 (3d Dist.), quoting *State v. Hunter*, 2011-Ohio-6524, ¶ 119.

*Analysis*

**{¶39}** Shaw was convicted of aggravated possession of drugs in violation of R.C. 2925.11(A), (C)(1)(c). That statute provides, in its relevant part, that "[n]o person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog." R.C. 2925.11(A). The statute elevates the level of the offense "[i]f the drug involved in the violation is a compound, mixture, preparation, or substance included in schedule I or II, with the exception of marihuana, cocaine, L.S.D., heroin, any fentanyl-related compound, hashish, and any controlled substance analog" and "[i]f the amount of the drug involved equals or exceeds five times the bulk amount but is less than fifty times the bulk amount . . . ." R.C. 2925.11(C)(1)(c).

**{¶40}** On appeal, Shaw argues that her aggravated possession of drugs conviction is against the manifest weight of the evidence because the evidence that Perkins possessed the methamphetamine is weightier than the evidence that she

possessed the methamphetamine. "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K). "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 2012-Ohio-5235, ¶ 45 (3d Dist.), quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

**{¶41}** "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). "'A person has "actual possession" of an item if the item is within his immediate physical possession.'" *Id.*, quoting *State v. Williams*, 2004-Ohio-1130, ¶ 23 (4th Dist.). "A person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.* "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982). "Finally, the State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Id. See also State v. Jenks*, 61 Ohio St.3d 259, 272-273 (1981), *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997).

"Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Voll*, 2012-Ohio-3900, ¶ 19 (3d Dist.).

{¶42} Consequently, since it is the only element that she challenges, we will address the weight of the evidence supporting whether Shaw constructively possessed the methamphetamine. Here, Shaw argues that her conviction is against the manifest weight of the evidence because "Perkins' testimony that he stole drugs from Shaw, and testimony that D.R. allegedly stated that the sexual abuse allegations involving Perkins were not true" was not credible. (Appellant's Brief at 7). Shaw's argument overlooks the relevant inquiry, which is whether the weight of the evidence demonstrates that she exercised dominion and control over the methamphetamine. *Compare State v. Frye*, 2018-Ohio-894, ¶ 57 (3d Dist.) (noting that it was "irrelevant who brought the [drugs] to the residence; rather, the relevant inquiry [was] whether the weight of the evidence demonstrates that Frye exercised dominion and control over the" drugs), citing *State v. Hilton*, 2004-Ohio-1418, ¶ 24 (9th Dist.) ("The arguments . . . that the drugs and other items found may not have actually belonged to him, are ultimately inconsequential."); *State v. Grundy*, 1998 WL 852844, *11 (9th Dist. Dec. 9, 1998) (noting that "ownership is irrelevant when considering whether an individual possessed a substance").

{¶43} Critically, "[a]lthough we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 2011-Ohio-5671, ¶ 13 (8th Dist.). "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 2007-Ohio-2202, ¶ 24.

{¶44} Notwithstanding Perkins's weak credibility, the jury also observed Shaw's testimony "and we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 2015-Ohio-222, ¶ 33 (3d Dist.), quoting *State v. Phillips*, 2014-Ohio-5162, ¶ 125 (10th Dist.). Indeed, the trier of fact was aware of Perkins's character defects and weighed his testimony accordingly. *See State v. Parsons*, 2017-Ohio-1315, ¶ 65 (3d Dist.). Consequently, in this instance, the trier of fact was free to credit or discount each witness's "testimony because the trier of fact is 'patently in the best position to gauge the truth.'" *Parsons* at ¶ 63, quoting *State v. Smith*, 2015-Ohio-1610, ¶ 24 (5th Dist.).

{¶45} Likewise, the jury was also able to assess Maag's and Powell's testimony against D.R.'s testimony regarding the sexual abuse allegations. *See id.* at ¶ 64 (concluding that "[t]he trier of fact was free to believe or disbelieve [the

witness's] testimony or accept part of what [the witness] said and reject the rest"). Importantly, the trier of fact was able to consider the demeanor of Maag, Powell, and D.R. as well as ""'"the manner in which [they] testifie[d], [their] connection or relationship with the prosecution or defendant, and [their] interest, if any, in the outcome."'"" *Id.* at ¶ 66, quoting *State v. Saxton*, 2003-Ohio-3158, ¶ 36 (9th Dist.), quoting *State v. Antill*, 176 Ohio St. 61, 67 (1964).

**{¶46}** Furthermore, based on our review of the record, we conclude that the jury could reasonably infer from the evidence presented that *Shaw* exercised dominion and control over the methamphetamine. *Accord Frye*, 2018-Ohio-894, at ¶ 58 (3d Dist.). Indeed, "'[a] jury can make reasonable inferences from the evidence.'" *Id.*, quoting *State v. Knight*, 2016-Ohio-8134, ¶ 26 (10th Dist.). ""'"It is permissible for a jury to draw inferences from the facts presented to them."'"" *Id.*, quoting *Knight* at ¶ 26, quoting *State v. Sanders*, 1998 WL 78787, *3 (6th Dist. Feb. 13, 1998). ""'"The weight given to an inference is a question for the trier of fact and will not be disturbed unless it is such that reasonable minds could not reach such a conclusion."'"" *Id.*, quoting *Knight* at ¶ 26, quoting *Sanders* at *3. In addition to Perkins's and Shaw's competing version of the events, the jury was also able to review text messages exchanged between Perkins and Shaw in which they discussed the drugs. Critically, State's Exhibit 3 reflects Shaw admitting that the stolen "money n dope" belonged to her. (State's Ex. 3). State's Exhibits 1 and 2 bolster

this confession by depicting that Shaw and Perkins discussed hiding and selling the drugs. Consequently, based on that evidence, the jury could infer that Shaw was exercising dominion and control over the methamphetamine and, therefore, that she constructively possessed the methamphetamine. *See Frye* at ¶ 58.

{¶47} For these reasons, we conclude that the trier of fact did not lose its way in determining that the evidence supporting Shaw's conviction is more compelling and credible than the evidence suggesting that she did not possess the methamphetamine. Therefore, Shaw's aggravated possession of drugs conviction is not against the manifest weight of the evidence.

{¶48} Shaw's first assignment of error is overruled.

{¶49} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and EPLEY, J.J., concur.**

**/hls**

**\*\* Judge Christopher B. Epley of the Second District Court of Appeals, sitting by Assignment of the Chief Justice of the Supreme Court of Ohio.**